## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **RODRIGO TARANGO,** | § | |
| **INDIVIDUALLY AND ON BEHALF** | § | |
| **OF OTHERS SIMILARSITUATED;** | § | |
| **JOHNATHAN SAVIS, BLAINE** | § | |
| **LASHLEY, ISMAEL BEAS, AARON** | § | |
| **DEGROAT, JOSHUA MCNABB,** | § | |
| **MICHAEL RODRIGUEZ, RICARDO** | § | |
| **RANGEL, REFUGIO A. BENAVIDES,** | § | |
| **JR., ABELARDO GARCIA,** | § | |
| **JOHNATHAN JUAREZ, JON-PAUL** | § | |
| **EVIEZ, ARNULFO TIJERINA, JR.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **CIVIL NO. SA-18-CV-00370-XR** |
| **v.** | § | |
| | § | |
| **CHEMIX ENERGY SERVICES, LLC,** | § | |
| **AND ROBERT BEAUBOUEF,** | § | |
| | § | |
| **Defendants.** | § | |

## ORDER ON MOTION FOR DEFAULT JUDGMENT

On this date, the Court considered Plaintiffs' Second Renewed Motion for Default Judgment (ECF No. 72) and Memorandum in Support (ECF No. 73).

### Background

This case arises under the Fair Labor Standards Act ("FLSA"). On April 26, 2018, Plaintiff Rodrigo Tarango brought this suit on behalf of himself and others similarly situated for failure to pay overtime. Plaintiffs worked for Defendants as operators and allege that they were misclassified by Defendants as exempt and paid a salary. Am. Compl. ¶ 4, 49. They allege that they worked overtime hours for which they were not paid the proper overtime rate. *Id.* ¶ 36. A class was certified on July 19, 2018, and sixteen additional plaintiffs opted in.

Plaintiffs' Amended Complaint, filed August 14, 2019, asserts FLSA claims against Defendants Chemix Energy Services, LLC, Robert Beaubouef, Beau Beaubouef, and Nathan H. Mays. ECF No. 42. It was later determined that Robert Beaubouef and Beau Beaubouef were the same person, and Beau Beaubouef was dismissed. Plaintiffs were unable to effect service on Nathan Mays, and he was dismissed. Plaintiffs properly served Defendants Chemix Energy Services, LLC, and it answered, but its counsel withdrew and it failed to obtain new counsel as ordered. Accordingly, the Court struck its answer and defenses, and Chemix is now in default. Plaintiffs personally served Robert Beaubouef on October 16, 2019 (ECF No. 51), and he failed to answer or otherwise appear, and is in default. The Clerk properly entered default as to Robert Beaubouef and Chemix Energy Services, LLC on May 12, 2020. ECF No. 64. Plaintiffs now seek a default judgment as to these Defendants.

**Analysis**

The Court previously ruled that Plaintiffs had established Defendants' liability under the FLSA based on the unrefuted allegations of the Amended Complaint. Plaintiffs originally sought damages for all Plaintiffs but submitted only the declaration of Plaintiff Tarango and no supporting documentation. The Court required Plaintiffs to submit proof of damages as to each Plaintiff and to address potential limitations issues. In response, six Plaintiffs sought damages in the renewed motion for default judgment. The Court noted additional problems with their submissions, and Plaintiffs filed a second renewed motion seeking damages for five of the Plaintiffs: Rodrigo Tarango, Abelardo Garcia, Jonathan Juarez, Blaine Lashley, and Orlando Rodriguez. Plaintiffs no longer sought damages for Refugio Benavides as all his claims were outside the limitations period. The Court held an evidentiary hearing on damages on January 14,

2021. At the hearing, the remaining five Plaintiffs gave testimony, and counsel for Plaintiffs asked that all other opt-in Plaintiffs' claims be dismissed without prejudice.

A. Statute of Limitations

The Court first addresses the applicable limitations periods. The FLSA establishes a two-year statute of limitations for ordinary violations and a three-year period for willful violations. 29 U.S.C. § 255(a). The Court finds that the admitted allegations in the First Amended Complaint establish that Defendants engaged in willful violations of the FLSA, such that a three-year statute of limitations applies.

"A cause of action accrues at each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed." *Halferty v. Pulse Drug Co*., 821 F.2d 261, 271 (5th Cir. 1987) (citation omitted); *see also Hendrix v. City of Yazoo City*, 744 F. Supp. 1412, 1415 (S.D. Miss. 1989) ("[T]he failure of an employer to pay minimum wages or overtime . . . constitutes a continuing violation, such that a new cause of action accrues with each paycheck." (citations omitted)). Courts have consistently interpreted the FLSA to allow plaintiffs to recover damages for pay periods "as far back as the statute of limitations will reach." *Pruiett v. West End Rests., LLC*, No. 3:11–00747, 2011 WL 5520969, at *5 (M.D. Tenn. Nov. 14, 2011). In a FLSA collective action, the statute of limitations for a named plaintiff (here, Tarango) runs from the date that the plaintiff files the complaint, while the limitations period for an opt-in plaintiff runs from the date the written opt-in consent is filed in court. *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916-17 (5th Cir. 2008); 29 U.S.C. § 256.

Thus, as to Defendant Chemix, the three-year period runs from April 26, 2015 to April 26, 2018 for Plaintiff Tarango. Blaine Lashley opted in on June 20, 2018. Refugio A. Benavides,

Jr. opted in on November 5, 2018. Abelardo Garcia opted in on November 6, 2018. Johnathan Juarez opted in on November 9, 2018. And Orlando Rodriguez opted in on January 16, 2019. The statute of limitations thus runs back three years from their opt-in dates as to their claims against Chemix.

The Amended Complaint adding Robert Beaubouef as a Defendant was filed August 14, 2019. In the renewed motion, Plaintiffs state that the relevant date for limitations for claims against Beaubouef is the date of the filing of the Amended Complaint. The Court will therefore apply that date, and thus the three-year period for all Plaintiffs for their claims against Beaubouef runs from August 14, 2016 to August 14, 2019.

As Plaintiffs recognize, this means that opt-in Plaintiff Refugio Benavides cannot recover any damages from Chemix or Beaubouef, since he worked in August and September 2015, and did not opt in until November 2018. Thus, Refugio Benavides's claims will be dismissed with prejudice as barred by limitations. Limitations also affects Blaine Lashley's claims against Beaubouef, as will be discussed below.

B. Damages

Although the Court initially granted default judgment on liability based on the pleadings, it noted that the pay stubs submitted in support of damages contained some evidence that Plaintiffs were in fact paid on an hourly basis rather than salaried. The Court ordered Plaintiffs to be prepared to present evidence at the hearing supporting their allegation that they were paid on a salary basis notwithstanding the pay stubs indicating hourly and overtime pay and also to explain any agreements with Defendants concerning compensation, including how salary and bonuses were to be calculated and paid, and whether the bi-weekly salary was intended to compensate Plaintiff for all hours worked or only for 40 hours per week.

4

The remaining five Plaintiffs were all Operators who alleged that they worked in excess of 40 hours per week (from 80 to 100 hours per week) and were not paid overtime wages. To establish liability, Plaintiffs rely in part on the admitted allegations of the First Amended Complaint ("FAC"), which include allegations that: (1) it was Defendants' policy to classify their Operators as exempt from the overtime provisions of the FLSA, FAC ¶ 49; (2) Defendants classified all Operators as salaried employees not entitled to overtime pay, FAC ¶¶ 49, 60; and (3) Defendants required Operators to work more than forty hours per week, for which they received no overtime pay, FAC ¶¶ 47-48. Plaintiffs also rely on Defendant Chemix's Answers to Interrogatories and Responses to Request for Production, where Chemix admitted in Interrogatory No. 6 that "[e]mployees were paid a monthly salary regardless of the number of hours worked each week. Employees were additionally paid a day bonus and *per diem* for each shift worked." ECF No. 72-7. Plaintiffs' sworn Declarations also state that they were misclassified as exempt and paid a salary.

Plaintiffs contend that the "disconnect" between the admitted allegations and what appears on the paystubs submitted with the motion for default judgment is the "result of Defendants' willful attempt to conceal the fact that they were knowingly violating the FLSA." ECF No. 73 at 8. Plaintiffs assert that "Defendants would determine how much was owed to Plaintiff and each opt-in Plaintiff based on their salary and bonuses earned during a pay period and then would concoct paystubs that appeared to show hourly and overtime pay totaling the amount that was being paid." *Id.* at 8-9. Plaintiff Juarez supported this assertion with his testimony that he was paid a salary with bonus and *per diem*, but that his pay stubs were changed to show hourly pay. Tr. 4-5. He testified that Chemix was "lying … on the pay stub . . . so one side of the pay stub would show our salary and bonus and *per diem* and the other side would

show how they converted it to hourly." Tr. 4. Despite being manipulated to show false hourly pay and overtime, Juarez also testified that the pay stubs accurately reflected the total amount paid to him. Tr. 7-8. Based on the evidence, the Court finds that Plaintiffs were paid a fixed guaranteed salary, as well as day bonuses and *per diem* payments, and were not paid based on an hourly rate with overtime.

Plaintiffs' requested damages calculations within their Complaint and motion for default judgment seek unpaid overtime at 1.5 times the regular rate for all hours worked in excess of 40 per week. Am. Compl. ¶ 42 ("Plaintiff alleges that Defendants failed to [pay] Plaintiff and members of the class an overtime rate of one and one-half times their regular rate of pay as required by the FLSA."). Plaintiffs' Amended Complaint alleges that they "never agreed that their salary would be sufficient to cover all hours worked." *Id.* ¶ 51. However, because the proper overtime multiplier is a question of law based on the facts, the Court noted in the Order setting the damages hearing that it required evidence to determine whether Plaintiffs were entitled to the 1.5 multiplier (as requested) or only an overtime premium of .5 for overtime hours worked. ECF No. 74 (citing *Roche v. S-3 Pump Serv., Inc.*, 154 F. Supp. 3d 441 (W.D. Tex. 2016) (finding that plaintiffs were entitled to only a .5 overtime premium for hours worked in excess of 40 per week under the fluctuating workweek ("FWW") method where a fixed salary covered all hours worked and non-discretionary bonuses were based on pumping, not on hours worked); *see also Shelby v. Boxer Prop. Mgmt. Corp.*, No. 4:16-CV-1549, 2019 WL 2436928 (S.D. Tex. Jan. 18, 2019) (examining whether to apply FWW method).

In addition to seeking a 1.5 multiple overtime premium, Plaintiffs' motion seeks to include the day bonuses in the regular rate calculation. Section 7(e) of the FLSA provides that the "regular rate" at which an employee is employed shall be deemed to include all remuneration

6

for employment paid to, or on behalf of, the employee, but shall not be deemed to include eight specific categories of compensation, including certain discretionary bonuses and *per diem* payments. At the close of the hearing, the Court directed Plaintiffs to file an excel spreadsheet of their damages calculations. The Court also requested "separately from the spreadsheet, I need you to tell me how did you arrive at the base rate because I frankly am very confused about how the *per diem* and the job bonuses and day rates are all going to get played into this, and so I need you to explain for me how you calculated the base rate and what factors you used in calculating the base rate . . . ." Tr. 25.

Plaintiffs submitted calculation worksheets with new supporting documentation of the Plaintiffs' pay, but did not submit any additional briefing concerning calculation of the regular rate in terms of whether the *per diem* or day/job bonuses should be included in the regular rate, nor did they include any briefing as to whether the FWW method should apply. In addition, the Court notes that the post-hearing calculations end up with slightly higher damages calculations.[1] Because no briefing accompanies the damages calculations, the discrepancy is not explained. However, it appears to be due to the fact that Plaintiffs include the *per diem* payments in the earnings for calculating the regular rate in the post-hearing calculations, while the *per diem* is not included in the calculations submitted with the motion for default judgment.

The Court further notes that the post-hearing documentation is consistent with Plaintiff Juarez's testimony at the hearing that the pay stub would have one side showing the salary, bonus, and *per diem* (what is submitted post-hearing) and the "other side" would show how Chemix converted it to hourly wages, since this new documentation shows "guaranteed pay" of a

---

[1]  For example, Rodrigo Tarango's default judgment submission seeks $23,073.80 in actual damages, while the post-hearing documentation calculations show damages of $25,338.75. Jonathan Juarez's default judgment submission seeks $42,801.68, while his post-hearing documentation calculations show $49,344.38 in damages. Each of the Plaintiffs' post-hearing calculations are similarly higher than those sought in the default judgment motion.

"monthly base," "*per diem*," and "day bonus," and then shows "actual pay" showing hourly and overtime pay, with *per diem* and "extra bonus" payments. Comparing this new documentation to the pay stubs previously submitted with the motion for default judgment, the pay stubs match as to earnings and *per diem*, though the pay stub dates generally fall behind the pay sheets by one to eight days, and the "pay period" shown on the pay stubs does not match the days worked on the post-hearing documentation.[2]

The supporting documentation indicates that every Plaintiff was paid a "guaranteed salary" with a "monthly base" ranging from $2000 to $4000, a *per diem* of $35 per day, and day bonuses ranging from $135 to $250. It appears that the *per diem* and the day bonuses were only paid for days worked "in the field." Thus, the evidence shows that each Plaintiff was paid a guaranteed salary (1/2 "monthly base" each pay period) regardless of the number of days or hours worked, and then paid a day bonus (of varying amounts as to each Plaintiff) each day they worked in the field, and a $35 *per diem* each day they worked in the field. For example, Garcia was mostly paid a "monthly base" of $3000, a *per diem* of $35, and a day bonus of $150. In most of his pay periods, he received 50% of his "monthly base" ($1500), plus a $35 *per diem* for each field day worked (versus office day), and a $150 day bonus for each field day worked. In a pay period where he worked nine field days, he therefore received $3,165 ($1500 base, $315 *per diem*, and $1350 day bonus), which is reflected on his June 5, 2018 pay stub as $2,850 in earnings and a $315 *per diem*. ECF No. 72-1 at ECF 8.

Blaine Lashley, whose monthly base started at $2000 and later increased to $3000, testified that the salary was not to cover all hours worked "because it was such a low amount it

---

2  For example, Abelardo Garcia's 5/21/2018 pay date pay stub (ECF No. 72-1 at ECF 7) shows pay period 5/1/2018 – 5/15/2018 and reflects $3750 in earnings (divided into hourly, overtime, and bonus) and $525 in *per diem* payments. The corresponding post-hearing document is dated 5/17/2018 and shows dates worked of April 16 to April 30, 2018, with $3750 in "guaranteed pay" of $1,500 base pay and $2,250 in day bonuses ($150 x 15 days), and $525 in *per diem* ($35 x 15).

was kind of like just to make sure we would get some sort of payment[;] it wasn't something that for the hours we were working." Tr. 13. At the $2000 base rate, if Lashley worked 84 hours per week as he testified, his hourly rate would be only $5.95. Lashley testified that other incentives such as bonuses were needed. Tr. 13.

Based on the evidence, the Court finds that Plaintiffs were paid on a salary basis, and were also paid a *per diem* and day bonuses for any days worked in the field, and were not paid on an hourly basis. The salary and bonuses together were intended to cover all hours worked.

C. Calculating the Regular Rate and the Overtime Premium

In a misclassification case, once the fact finder has established that the employee is due unpaid overtime, the proper determination of the regular rate of pay and overtime premium to which an employee is entitled is a question of law. *Black v. SettlePou, P.C.*, 732 F.3d 492, 496 (5th Cir. 2013). In other words, after the trier of fact has found that a misclassified employee is due overtime pay, the court must determine as a matter of law whether to apply the standard method of calculating the amount of overtime pay using the one and one-half times the regular rate of pay multiplier found in the FLSA, or to apply the fluctuating workweek ("FWW") multiplier of only one-half of the regular rate of pay. *Id.*

The FLSA sets the standard workweek at forty hours and requires employers to pay non-exempt employees no less than one and one-half times their regular rate of pay for any hours worked in excess of forty. 29 U.S.C. § 207(a)(1). The FWW is one method of satisfying the FLSA's overtime pay requirement. *Black*, 732 F.3d at 496 (citing *Samson v. Apollo Res., Inc.*, 242 F.3d 629, 636 (5th Cir. 2001)). The FWW is an employment arrangement in which an employee receives a fixed weekly pay for a fluctuating work schedule with a varying number of hours worked each week. *Black*, 732 F.3d at 496. When the employer and employee have agreed

on a fixed salary for varying hours, the correct method of calculating overtime premiums is "dividing the actual hours worked each week into the fixed salary," which "results in a determination of the regular rate of pay" for that workweek, and the "overtime payment for that week is then determined by multiplying all hours over 40 in the workweek by ½ the regular rate for that workweek." *Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135, 1138-39 (5th Cir. 1988). In *Roche v. S-3 Pump Serv., Inc.*, 154 F. Supp. 3d 441, 449 (W.D. Tex. 2016), a similar case to this one, the Court found that the FWW method applied. However, the Court finds this case distinguishable.

The FWW method requires that four criteria be met:

(1) the employee's hours must fluctuate from week to week;
(2) the employee must receive a fixed salary that does not vary with the number of hours worked during the week (excluding overtime premiums);
(3) the fixed amount must provide compensation every week at a regular rate at least equal to the minimum wage; and
(4) the employer and employee must share a clear mutual understanding that the employer will pay the fixed salary regardless of the number of hours worked.

Although the first and fourth elements are likely met, based on the evidence before it, the Court finds that the evidence does not support application of the FWW method for calculating the overtime premium because the second and third elements are not met.

Plaintiffs testified that they were paid a set salary regardless of the hours worked. When Juarez was asked if he was told "hey this is going to be your salary and it's going to cover all hours worked," he said, "Oh yes even if we worked 24 hours straight the whole week or worked all hours that was our pay no matter what that was our agreement they said the only way we make more money is by creating more job tickets." Tr. 9. Plaintiffs also received regular bonuses, and their total pay changed each pay period because the jobs would change and "that's where they would have to pay [them] more or less depending on my amount of jobs." Tr. 10.

Although each Plaintiff was guaranteed a minimum payment each pay period, which was not dependent on hours worked, this "salary" was not intended to cover all hours worked, as it was too low, and Plaintiffs were also given day bonuses for each day or shift worked, which was intended to fully compensate Plaintiffs.

Because of the inclusion of bonuses, Plaintiffs' salaries were not "fixed" as is required for the FWW method. *Dacar v. Saybolt*, 914 F.3d 917 (5th Cir. 2018). The regulations refer to a "fixed amount" and a "fixed salary," not a minimum or base salary. *See* 29 C.F.R. § 778.114(a). When the employer's incentive payments depend on the types of hours employees work each week, their weekly straight-time compensation is not "fixed." *Dacar*, 914 F.3d at 925. Here, employees were given bonuses depending on whether they worked field hours, and as a result their salary varied greatly every pay period.[3] The DOL has issued a final rule stating that incentive payments are "incompatible with the fluctuating workweek method" because it could cause "employers to pay a greatly reduced fixed salary and shift a large portion of employees' compensation into bonus and premium payments, potentially resulting in wide disparities in employees weekly pay." *See* 76 Fed. Reg. at 18850. That is the case here. In some cases, the minimum salary was too low to offer adequate compensation, and a large portion of Plaintiffs' pay came from bonuses, resulting in wide disparities in weekly pay rather than a "fixed salary."

In addition, as to Blaine Lashley during the period from October 2015 to March 2017, his monthly base was only $2,000, meaning that each paycheck he received $1,000 in salary. Yet he testified he worked a minimum of 168 hours during that same pay period, yielding a regular rate of $5.95, below the minimum wage. Similarly, Orlando Rodriguez's monthly base salary was

---

[3]  The Plaintiffs' declarations state they received regular bonuses as part of their compensation and the bonus was based on a progressive percentage of the completed jobs. The pay stubs indicate that each Plaintiff was assigned a specific "day bonus" rate, and paid that day bonus when they worked in the field (the number of day bonus payments always matches the number of *per diem* payments). They received a .5 day bonus and a .5 *per diem* when there was a "dead call," but otherwise always received a full day bonus and *per diem*.

$2,400, so he received $1,200 per pay period. If he worked 100 hours per week, his hourly wage from this salary would be $6.00 per hour, below the minimum wage. Thus, the "fixed salary" component of some Plaintiffs' pay did not provide compensation every week at a regular rate at least equal to the minimum wage. Accordingly, the Court finds that the FWW method does not apply to calculate Plaintiffs' regular rate and overtime premium.

In *Dacar*, the Fifth Circuit noted that, even when the FWW method does not apply, the regular rate is calculated by dividing the salary and bonuses for the week by the total number of hours that amount was intended to compensate, including both overtime and non-overtime hours if appropriate. 914 F.3d at 929-30 (citing *Singer v. City of Waco, Tex.*, 324 F.3d 813, 825 (5th Cir. 2003) (district court correctly included both non-overtime and overtime hours in the divisor when calculating the regular hourly rate)); 29 C.F.R. § 778.208 ("Bonuses which do not qualify for exclusion from the regular rate as one of [the eight specified] types must be totaled in with other earnings to determine the regular rate on which overtime pay must be based. Bonus payments are payments made in addition to the regular earnings of an employee."). The overtime premium is then 1.5 times the regular rate. *Dacar*, 914 F.3d at 930 (stating that if an employer does not meet the conditions necessary to employ the FWW method, it may not reap the benefit of using the .5 multiplier rather than the standard 1.5 multiplier).

The Court will therefore utilize this method to calculate the regular rate and the overtime rate for each Plaintiff, using the pay stubs submitted with the motion for default judgment. The Court will not include the *per diem* in calculating the regular rate because Plaintiffs did not include it in their original motion for default judgment calculations or Complaint, did not include any briefing as to why it should be included, and have not provided evidence from which the Court can conclude that it should be included.

D. Liquidated Damages

Section 216 of the FLSA provides, "Any employer who violates the provisions of section 206 or section 207 shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Plaintiffs contend that liquidated damages are "the norm" when an FLSA violation is found and argue that they are entitled to liquidated damages because an employer is relieved of his duty to pay liquidated damages only if the employer proves that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the FLSA. *See* 29 U.S.C. § 260; *Mata v. Caring for You Home Health, Inc.*, 94 F. Supp. 867, 879 (S.D. Tex. 2015) ("Because liquidated damages are prescribed as the norm by Section 216, the employer bears the 'substantial burden' to demonstrate 'good faith and a reasonable belief that its actions did not violate the FLSA.'")(quoting *Bernard v. IBP, Inc. of Neb.*, 154 F.3d 259, 267 (5th Cir. 1998)). Defendant is in default and thus has not shown that liquidated damages should not be awarded. The Court finds that liquidated damages are proper.

**Plaintiffs' Individual Damages**

In the renewed motion, Plaintiffs submit the declarations of Rodrigo Tarango, Abelardo Garcia, Johnathan Juarez, Blaine Lashley, and Orlando Rodriguez, along with "damages calculations" for each.

Rodrigo Tarango

Tarango is the named Plaintiff. According to his Declaration (ECF No. 72-6), he was employed by Defendants as an Operator from approximately April 2017 through April 2018. He filed this lawsuit as named Plaintiff April 26, 2018. Tarango states that throughout his

employment, he was classified as exempt from overtime wages and paid a salary with no regular overtime pay. Tarango states his best estimate is he worked approximately 80 hours per week at a minimum. Tarango states that he is owed $46,147.60, which is $23,073.80 in back wages for unpaid overtime premiums and an equal amount in liquidated damages.

The Court awards $23,073.75 in damages and an equal amount in liquidated damages as against both Chemix and Beaubouef.

Abelardo Garcia

According to the Declaration of Abelardo Garcia (ECF No. 72-2), Garcia worked as an Operator for Defendants from approximately March 2018 through December 2018. He opted in on November 6, 2018. The post-hearing documentation indicates that Garcia was switched to hourly pay in October 2018. Garcia states his best estimate is he worked approximately 100 hours per week at a minimum. Garcia states that he is owed $66,213.00, which is $33,106.50 in back wages for unpaid overtime premiums and an equal amount in liquidated damages.

The Court finds that the proper award is $31,491.00 in overtime premiums, with an equal amount in liquidated damages as against both Chemix and Beaubouef. This is the amount requested in the motion for default judgment less the last entry, which the supporting documentation indicates was based on hourly pay.

Johnathan Juarez

According to the Declaration of Johnathan Juarez (ECF No. 72-3), Juarez worked as an Operator for Defendants from approximately October 2017 through November 2018 and from January 2019 until they closed on August 1, 2019. Juarez opted in on November 9, 2018 and seeks damages for his work in 2017 and 2018. Juarez states his best estimate is he worked approximately 80 hours per week at a minimum. Juarez states that he is owed $85,603.35, which

is $42,801.68 in back wages for unpaid overtime premiums and an equal amount in liquidated damages. The Court finds that Juarez is owed $43,551.68 in overtime wages and an equal amount in liquidated damages.[4]

### Orlando Rodriguez

According to the Declaration of Orlando Rodriguez (ECF No. 72-5), Rodriguez worked as an Operator for Defendants from approximately January 2016 through December 2016, but he has provided pay stubs and pay sheets from October 2016 to March 2017. He opted in on January 16, 2019 (ECF No. 30). He estimates that he worked approximately 100 hours per week minimum. Rodriguez states that he is owed $38,853.00, which is $19,426.50 in back wages for unpaid overtime premiums and an equal amount in liquidated damages. The Court finds that this is the correct amount and awards this amount.

### Blaine Lashley

According to the Declaration of Blaine Lashley (ECF No. 72-4), Lashley worked as an Operator for Defendants from approximately August 2014 through August 2018. Lashley opted in on June 20, 2018, and thus may recover from Chemix going back to June 20, 2015 and from Beaubouef going back to August 14, 2016. Lashley states his best estimate is that he worked approximately 84 hours per week at a minimum. Lashley states that he is owed $280,586.72, which is $140,293.36 in back wages for unpaid overtime premiums and an equal amount in liquidated damages. The Court finds that Lashley is entitled to $135,914.29[5] in unpaid overtime and an equal amount in liquidated damages from Defendant Chemix, for a total of $271,828.58. As to Defendant Beaubouef, Lashley may recover $94,678.58 in unpaid overtime and an equal

---

[4]  His submitted calculations with the motion for default judgment are off by $750 because the gross earnings for 4/30/18 should be $3,480 rather than $2,480.

[5]  The Court did not include auto allowances or hot shot payments in calculating the regular rate, as these appear to be reasonable reimbursements for Plaintiff's use of a personal truck to conduct business for the employer's benefit.

amount in liquidated damages, for a total amount of $189,357.16, jointly and severally with Chemix.

**Conclusion**

Plaintiffs' Second Renewed Motion for Default Judgment (ECF No. 72) is GRANTED as follows:

The Court awards Plaintiff Rodrigo Tarango $23,073.75 in damages for unpaid overtime and an equal amount in liquidated damages, for a total of $46,147.50, to be recovered from Defendants Chemix and Beaubouef, jointly and severally.

The Court awards Plaintiff Abelardo Garcia $31,491.00 in damages for unpaid overtime and an equal amount in liquidated damages, for a total of $62,982.00, to be recovered from Defendants Chemix and Beaubouef , jointly and severally.

The Court awards Plaintiff Johnathan Juarez $43,551.68 in damages for unpaid overtime and an equal amount in liquidated damages, for a total of $87,103.36, to be recovered from Defendants Chemix and Beaubouef, jointly and severally.

The Court awards Plaintiff Orlando Rodriguez $19,426.50 in damages for unpaid overtime and an equal amount in liquidated damages, for a total of $38,853.00, to be recovered from Defendants Chemix and Beaubouef , jointly and severally.

The Court awards Plaintiff Blaine Lashley $135,914.29 in unpaid overtime and an equal amount in liquidated damages, for a total of $271,828.58, to be recovered from Defendant Chemix. Defendant Beaubouef is jointly and severally liable with Chemix for the following portion of damages: $94,678.58 in unpaid overtime and an equal amount in liquidated damages, for a total amount of $189,357.16.

Further, Plaintiff Refugio Benavides, Jr.'s claims are DISMISSED WITH PREJUDICE as barred by limitations, and Benavides shall take nothing by his claims.

16

The claims of the remaining opt-in Plaintiffs Johnathan Savis, Ismael Beas, Aaron DeGroat, Joshua McNabb, Michael Rodriguez, Ricardo Rangel, Jon-Paul Eviez, Arnulfo Tijerina, Jr., John White, Bo Ottinger, and Luis Paz, Jr., are DISMISSED WITHOUT PREJUDICE.

The Court will enter a separate judgment pursuant to Rule 58.

SIGNED this 6th day of April, 2021.

XAVIER  RODRIGUEZ

UNITED STATES DISTRICT JUDGE